We will now hear Pappas v. Lorintz and we have Mr. Pappas who's reserved one minute for rebuttal. Pappas, are you there? Yes, can you hear me? We can hear you. We can't see you, but I guess you're just doing this by... Oh, there you are. Now we can see you. All right. Yeah. All right. Go ahead, Mr. Pappas. Good morning, your honors. May it please the court. My name is Anthony Pappas. I am the appellant pro se on this appeal. I would like to thank you for the opportunity to present oral argument today as I did in the 1998 case of Pappas v. Passius, cited in briefs on both sides, and I presented oral argument before the Second Circuit there also. But this is a case featuring civil rights violations under Title 42, Section 1983 of the United States Code and election law violations under Article 52, Chapter 301 of the same code. In 2018, I was endorsed by the Republican Party to run for However, my chances of success were derailed early on by election interference and seizure of campaign funds. This was accomplished through unlawful retributions for my years of public criticism and reform efforts directed at New York's divorce courts. As I read the record in briefs, there are three overarching issues which call for a reversal and remand to another judge of the Eastern District of New York. First, subject matter jurisdiction is presumed and not the exception in the case seeking recourse for unlawful interference in a federal election. To argue otherwise is to call for an abandonment of our federal court's most important duties under the U.S. Constitution. The domestic relations exception relied upon by the respondents in court below is an aberration here. It has no application to a case that raises issues of federal rights that are eminently more important than the protracted 15-year divorce that has yet to achieve finality. In three unanimous Supreme Court opinions written by the late esteemed Justice Ruth Bader Ginsburg, lower courts were scolded for abusing such an abstention doctrines to dismiss valid federal claims. They include Sprint Communications v. Jacob in 2013, Marshall v. Marshall in 2006, and ExxonMobil v. Saudi Industries in 2005, all cited in my briefs or the record. Second, preclusion rules are obviated by this court's binding decision in Procter v. Leclerc, detailed at page 12 of my reply brief. In that case, periodic review of prison housing assignments was deemed sufficiently new and distinct to require a reversal of a dismissal decision based on preclusion grounds. Suffice it to say, the congressional election in this case is at least as important as the prison inmates' grievances in Procter. Third, the federal election law makes it clear that any person, and I stress any person, who participates in the misappropriation of campaign funds is guilty of a federal crime. The bank respondent's brief sets forth the arduous process for using the Election Commission to remedy this violation. That process could not take its course until after the election, and it is inconceivable that Congress intended to permit the thieves in this case to influence the outcome of a federal election. By disallowing me timely access to federal court, recourse, transparency, and accountability were all swept under the carpet. To follow the respondent's reasoning, both the letter and spirit of federal election laws could be circumvented by third-party operatives in a divorce case, thereby opening the door to future crimes of this variety that would set bad precedent contrasting with such convictions as ex-Congressman Duncan Hunter and his wife in California for campaign misappropriations. With the upcoming argument by the New York Attorney General, this may be a good time for me to ask why my adversaries here are not being prosecuted for a failure to return campaign funds that have long been applied to private purposes. The seizure of funds is not in dispute. Attorney Henry Crewman was also scheduled to be present, but he withdrew, I think, two days ago. Obviously, he's avoiding accountability, and we can't get an explanation from him why he hasn't returned these donated funds to the present day. As for TD Bank, why did it not set aside the funds in escrow upon discovering that the subject account was set up as a campaign account with a distinct tax identification number, and TD Bank has chosen not to be here either? At the very least, the bank could have held the funds in escrow for future judge resolution, as the insurance company did in American Mutual, cited at page 10 of my reply brief. Mr. Pappas, I think your time is up, and you do have a minute for rebuttal, but before we hear from Ms. Olson, I did want to just ask you about the filing injunction issue, because you say in your papers that the imposition of the filing injunction was wholly unsupported by the record, but I didn't interpret what happened below to be the actual filing of litigation injunction. The magistrate judge said there should be an order to show cause as to why you shouldn't be barred from filing future lawsuits without permission of the court. The district court adopted the R&R in its entirety. In its judgment, it said in the future plaintiffs are directed to show cause in writing as to why he should not be barred from filing complaints without leave of court, and there was no date set for that, but I didn't interpret those two things together to actually be imposing the filing injunction, because we're supposed to give you notice, the court's supposed to give you notice before such an injunction is issued, so I guess my question to you is, why didn't you respond, why didn't you put, I know there was no date given, but why didn't you put in something as to why there should be no filing injunction, or do you intend to do that? Well, there's, as you say, there's no date, but again, the anti-filing order is totally bizarre and absurd, because it's a distraction from the merits, and again, it's totally absurd. I haven't abused the process to file a lot of claims in the federal court. That's the point you would make if there was a motion to order to show cause, then you would, that's how you, that's the point at which you would litigate, this question that you're trying to litigate now. All right, I'm pro se, I'm not aware of all these procedures, thank you for informing me. All right, thank you, Mr. Pappas. Ms. Olson. Good morning. May it please the court, Caroline Olson, on behalf of the state defendants. The district court's decision should be affirmed for any one of several independent reasons. I plan to start with abstention and immunity, but I will, of course, be happy to answer any questions the court may have on any of the other grounds for dismissal or the limited filing injunction. Let me just ask you a question at the start. Do you agree with the proposition that there is no filing injunction in place? I think that the, what happened below was a little bit irregular and that it is difficult to interpret. As I interpreted it, what the magistrate judge did was recommend that a limited filing injunction be put in place and that it could be interpreted that he was, that Mr. Pappas was then given notice by that R&R. He did file objections to that as to why a limited filing injunction should not be put in place, that's at the appendix at 34. And the district court's order could be read as suggesting that in the future to file a complaint, he would need to get permission of the court. Of course, if the court has any concerns about that, then he would have the opportunity to file something below strictly on the issue of whether or not, of showing cause to contest the limited filing injunction if this court thinks that what happened below did not give sufficient notice for Mr. Pappas. I don't know that a litigant, especially a pro se litigant would necessarily think that that would be their opportunity. They would wait for the district court to actually do that and then a date would be set, right? Isn't that the normal course? That is certainly the normal course, Your Honor. Again, he did, in fact, Mr. Pappas did in fact submit papers in this case explaining why he didn't think, believe a filing injunction was appropriate. But of course, this court is free to let this go back on the limited issue to allow him to show cause going forward just on the question of the filing injunction. And also the filing injunction would be limited to the subject matter of this case, right? Under our case law, it wouldn't be a general filing injunction that you can file any lawsuit would have to be related to the subject matter of this litigation, right? I believe that is correct, Your Honor. Yes. Turning to the question of abstention, abstention is warranted in this case under the domestic relations abstention doctrine because the gravamen of Mr. Pappas's claims is a dispute with the outcome of the state divorce proceeding. Pappas's primary request is for an order invalidating the decisions that he lost in the state divorce proceeding. And each of his legal theories challenges the correctness and fairness of the state's court's decisions and would require a federal court to come embroiled in the details of Pappas's matrimonial dispute to determine whether there was bias, unfairness, or error. This is equally true of Mr. Pappas's campaign-related allegations. His allegations complain about the entry of a money judgment and Justice Lawrence's refusal to lift a restraint on his accounts as part of the matrimonial dispute. Let me interject a question, please. I understood the issue to be whether he was barred on the by issue preclusion, not limited, it doesn't matter whether the judgment, whether the prior ruling was correct or incorrect, issue preclusion arises when you've litigated it. If issue preclusion only arose when the prior ruling was correct, it would be meaningless. And my understanding was that our question was simply was has this been, did he previously litigate this? Your Honor, my understanding is that some of the other appellees have argued, are continuing to press the argument of res judicata or issue estoppel. The state defendants are not pressing that argument because after the district court issued its decision in this case, Judge Sullivan issued a decision in Deem v. DeMella-Deem that said that the domestic relations exception to subject matter jurisdiction applied only in diversity cases. I understand that, but my point is if it's been previously litigated, it doesn't cease to be barred by issue preclusion because new rulings suggest that that prior ruling was wrong. Well, but there is, I think, a well-established doctrine that when there is a change in the governing legal precedent and intervening change in governing law, then even if the specified elements of collateral estoppel are present, re-examination of the legal issue is appropriate when there has been a change in the legal landscape. That was this court's decision in Faulkner v. National Geographic. The Supreme Court has also suggested as much in the Herrera v. Wyoming decision. And so Ms. Olson, in the prior decision, the district court, in addition to finding the application of the domestic exceptions, domestic relations exception, also alternatively and non-state actors for the other defendants. So that's certainly, just to go to Judge LaValle's point, the judicial immunity, that's collateral estoppel. There's no change in the law on that, right? That's true, although in this case, of course, Justice Lawrence was not a party to the prior action. And so there's an open question as to whether the questions of issue estoppel would apply and protect him. Of course, the state would have no objection if that's the grounds on question of sovereign immunity and judicial immunity in the first instance. There's no question that state defendants are shielded by those doctrines. Mr. Pappas is looking for, essentially, retrospective relief in the sense that what he is asking for is a declaration that previous orders of the state divorce proceedings were invalid. And just one point on the election, Mr. Pappas' election law claim, as we note in our brief, Mr. Pappas raises concerns about timing. The federal election laws not only provide that the FEC is this exclusive actor for enforcing the election laws, but it also provides procedures to expedite the FEC's ability to take, to bring litigation when there's probable cause for an election law violation in the immediate 45 days before an election. And there's been no showing by Mr. Pappas that those procedures have in any way hindered the FEC's ability to timely correct any election law concerns. But in any event, because the FEC is the exclusive actor to enforce the election laws, that, among other reasons, precludes him from bringing any private cause of action. All right. Thank you, Ms. Olson. Mr. Pappas, you have one minute for rebuttal. Okay. The FEC is not the exclusive agency that can enforce election laws. Basically, Congress didn't anticipate when it wrote the laws that some random judge would order the seizure of campaign accounts consisting of donations from other parties. So that wasn't explicitly in the law, but it's an implied right of action. And for the Federal Election Commission itself, there was an article in the Los Angeles Times in August of this year that the FEC is not even functioning at present because it doesn't have a like 2016. So these cases go back even before my election in 2018. So again, I sought to do the appropriate thing in terms of the short time frame and go to the federal courts. And there's implied right of action to do that. And there's no dispute now that donations from third parties that were intended for campaign purposes were stolen. And that's against the law. And that issue is the main thrust of why I am appearing here to have that enforced. And the people that misappropriated the funds should be punished. And just as Duncan Hunter and his wife were in California. All right. All right. Thank you, Mr. Pappas. Thank you, Ms. Olson. We will reserve decision. Have a good day. Thank you.